UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE RICHARD J. DOUD

and

ANDREW M. FERGUSON

Case No. 15-mc-50494

Hon. Mark A. Goldsmith
Hon. Laurie J. Michelson
Hon. Matthew F. Leitman

_____/

**OPINION & ORDER**

Respondents Richard J. Doud and Andrew M. Ferguson, both principals at pertinent times with Davidson, Breen, Doud, Steele & Ferguson, P.C. (the "Firm"), were referred to the undersigned three-judge panel for disciplinary proceedings pursuant to E.D. Mich. LR 83.22. The referral resulted from the filing in this Court of numerous social security appeals under Doud's name, from 2012 to 2015, which were woefully deficient both as to the quality of the briefs and the management and monitoring of the appeal process on behalf of clients. The "one-size-fits-all" briefs often had very little to do with the facts of the particular case in which they were filed; and, except in one case, there was no lawyer review of opposing briefs and magistrate judge rulings in the cases. This repeated pattern of derelict performance led several magistrate judges and district judges to impose sanctions on Doud. In connection with the imposition of sanctions in one case, Doud and Ferguson misled the sanctioning judge regarding their compliance with his order by submitting a false affidavit.

The questions raised by these revelations in 2015 prompted then-Chief Judge Gerald Rosen to convene the Panel to address misconduct that may have been committed by Doud and Ferguson. To initiate the proceeding, the Panel issued an order to show cause to both Respondents,

1

who appeared by counsel and responded to the show cause order. The Chief Judge also appointed the Grievance Administrator of the Michigan Attorney Grievance Commission as Prosecuting Counsel under E.D. Mich. LR 83.22(e)(6)(a) to conduct the investigation and present evidence to the Panel. Prosecuting Counsel did so by conducting depositions of the Respondents and several lawyers and a legal secretary who worked at the Firm.[1] After receiving proposed findings from the Prosecuting Counsel and responses thereto, the Panel conducted a full hearing at which Doud and Ferguson testified; the parties later submitted supplemental proposed findings and a supplemental response.[2]

After reviewing all of the evidence, the Panel concludes that both Doud and Ferguson engaged in serious violations of the Michigan Rules of Professional Conduct, with Doud's violations being more egregious.[3] These violations warrant suspending Doud from practicing before this Court for 90 days and publicly reprimanding Ferguson for his misconduct.

## I. FINDINGS OF FACT

### A. General Factual Background

The Firm's practice consisted of workers' compensation, personal injury, and social security, with the Firm's bread and butter being workers' compensation. During the period in

---

[1] The depositions, also referred to as sworn statements, were filed on the docket. See Doud Tr. (27-2); Ferguson Tr. (Dkt. 27-3); Steele Tr. (Dkt. 27-5); McHugh Tr. (Dkt. 27-6); Wood Tr. (Dkt. 27-7); M. Doud Tr. (Dkt. 27-8); Smith Tr. (Dkt. 35-1); Lupisella Tr., at 10, 19-20 (Dkt. 37).

[2] See Prosecuting Counsel's Proposed Findings (Dkt. 27); Ferguson Resp. to Proposed Findings (Dkt. 29); Doud Resp. to Proposed Findings (Dkt. 30); Prosecuting Counsel's Supplemental Proposed Findings (Dkt. 36); Ferguson Resp. to Supplemental Proposed Findings (Dkt. 38).

[3] The Michigan Rules of Professional Conduct are applicable to lawyers admitted to this Court. See E.D. Mich. LR 83.22(b).

question, the Firm was managed by three shareholders, Ferguson, Michael Doud,[4] and Floyd Steele.[5] There were also two non-equity partners, James Smith and Philip Dellasantina, as well as associate attorneys.

Doud was a shareholder of the Firm from 1977 until January 1, 2012, when a shareholder buyback agreement that he had executed on December 31, 2011 became effective. Doud's full level of involvement with the Firm following the execution of the agreement remains unclear. But what is clear is that Doud was permitted to manage various aspects of the Firm as he saw fit and to practice as much or as little as he wanted even after the agreement went into effect. See Ferguson Tr. at 103-104; Steele Tr. at 6, 39-40; McHugh Tr. at 13, 40; M. Doud Tr. at 7, 11, 13-14. Certain shareholders and other Firm employees were uncertain as to Doud's actual status vis-à-vis the Firm. See Ferguson Tr. at 130-131. In fact, Ferguson was unsure of Doud's status until March 2015, when Doud instructed Ferguson to inform the Court that Doud had retired as of December 2011. Id.; see also Letter of Referral at 3 (Dkt. 2) (noting that Ferguson, in a letter responding to sanctions imposed by Judge Gershwin Drain, informed the Court that Doud had retired as of 2011). Notwithstanding the uncertainty of Doud's exact status within the Firm, the Firm did not publicly announce any new status for Doud, because it and Doud sought to conceal from clients and adversaries any "reduced" role for him. See Doud Tr. at 30 (describing his appearance as a fully active member of the Firm as a "façade," which the Firm was able to "play" for a year or two).

---

[4] Unless otherwise stated, all references to simply "Doud" refer to Richard Doud. The Court will refer to Doud's son, Michael Doud, by his full name.

[5] Ferguson noted in a motion (Dkt. 39) that Michael Doud has since left the Firm to start his own practice. The current status of the firm is unclear, as it appears to be in the process of dissolution. See Davidson, Breen, Doud, Steele & Ferguson P.C. v. Michael P. Doud, et al., No. 16-30525-CB (Saginaw Cir. Ct. August 2, 2016).

Much of the Firm's social security work was driven by its workers' compensation practice, because claimants often were contractually required to apply for disability benefits with the Social Security Administration ("SSA"). See Doud Tr. at 7. Doud hired Ruth Wood, a legal secretary, to assist with the social security practice and "trained [her] over the years with regard to handling Social Security files." Doud Tr. at 12. It appears that once Doud was comfortable with Wood's competence, he allowed her to file initial applications for social security on her own. See Doud Tr. at 12-13. Doud began reducing his social security practice in the mid-1980s, and the responsibility for handling the administrative hearings shifted to younger, newer attorneys with the Firm. Doud Tr. at 14-16.

Beginning in 2002 a new associate attorney, Mikel Lupisella, took over the social security practice within a month of starting his employment; he was the attorney primarily responsible for social security through the end of 2011. Doud Tr. at 23-24; Ferguson Tr. at 89, 134, 143; Lupisella Tr., at 10, 19-20.[6] Doud stated that when Lupisella took over the practice, Doud was not involved in the social security practice beyond "keeping [an] eye on [his] [w]orkers' [c]ompensation cases." Doud. at 22-23. When the district court transitioned to electronic filing, Lupisella obtained his own electronic filing credentials (CM/ECF username and password); he did not use one associated with Doud. Lupisella Tr. at 14-15. Lupisella left the Firm in December 2011.

After Lupisella's departure, Doud was concerned about the future and stability of the social security practice and attempted to recruit one of the partners to take over the practice. Doud Tr. at 31; Ferguson Tr. at 22-23. Ferguson agreed to step into the social security practice at the administrative level of the social security proceedings, even though he had no prior experience in

---

[6] Lupisella, who had no prior experience in social security, explained that his training consisted of reading books on the subject at the Firm, shadowing, and meeting some of the administrative judges. Lupisella Tr. at 10-11.

that area. Ferguson Tr. at 23, 24 While Doud insists that he told Ferguson to take over the entire social security practice, the Panel credits Ferguson's testimony that Doud asked him to handle only the administrative stage, not court appeals.[7] Because Ferguson was never told by Doud to supervise the Firm's social security appeals, he assumed that those cases were being handled by a process put into place by Doud and Wood. Ferguson Tr. at 24, 52-53, 108 ("I didn't know that I had to ask [questions about the brief-writing process for appeals in district court] because I assumed that [Doud] had set up a good system.").

For all intents and purposes, it was legal secretary Wood who ran the Firm's social security practice after Lupisella's departure. If the initial application for benefits was denied, Wood would meet with the clients and prepare the necessary documents for the hearing before an administrative law judge. Wood Tr. at 9-10. If the administrative law judge denied the claim, Wood would automatically file an appeal of the decision to the SSA Appeals Council. Id. at 16, 19-20; see also Ferguson Tr. at 46 (stating that once the administrative hearing was completed, the case was essentially done from his perspective); Id. (stating that if a client wanted to pursue an unfavorable decision he would direct the client to speak to Wood). If the Appeals Council denied an appeal, the client could further appeal the administrative decision in federal court by speaking with Wood or the assigned attorney. Wood Tr. at 20-21.

If the client wanted to proceed to federal court, Wood would instruct either Aaron Lemmens or Paul McHugh, two associate attorneys who joined the Firm after Lupisella left, to

---

[7] As an example of Doud's lack of credibility, he testified that he first received his CM/ECF login nearly two decades ago. Doud Tr. at 21. However, the CM/ECF system was not operational until 2005, and court records reflect that Doud's login was not obtained until after Lupisella left in the Firm in December 2011. Further, Ferguson is more believable because he consistently expressed remorse for his misconduct and attempted to rectify the situation, while Doud tried to provide a rationalization for his ethical violations. See Doud Tr. at 36 (noting that he misled the public and courts about his role with the Firm "because I wanted to make sure they did well. Hell, I'm sorry, my son is in the Firm.").

5

begin writing briefs. Lemmens Tr. at 32-33; McHugh Tr. at 8-9, 10. McHugh testified that he was given no training prior to writing the briefs. Id. at 8. Lemmens indicated his "training" was limited to sitting in on administrative hearings and speaking with Wood – a non-lawyer – and Ferguson, who lacked any experience in the subject area. Lemmens Tr. at 9. Lemmens also testified he did not discuss the merits of cases with Ferguson, and that Ferguson never reviewed his social security work product or gave any type of formal evaluation. Id. at 30, 55. Nor did Ferguson or other senior lawyers give any substantive advice in terms of pointing out appropriate case law or statutory authority to assist McHugh or Lemmens. McHugh Tr. at 17.

When it came to filing cases in district court, Lupisella, while at the Firm, filed both complaints and briefs under his name using a CM/ECF username specific to him. Lupisella Tr. at 14-15, 16. According to Wood, this was not the appropriate procedure, as the filings should have been done under Doud's name; consequently, when Lupisella departed, Wood was instructed by Doud to return everything to Doud's name.[8] Wood Tr. at 22-23. Craig Zanot, then a shareholder of the Firm, and Wood together obtained a CM/ECF username for Doud in December 2011. See Emails at 5-6 (cm/ecf page) (Dkt. 35-2).[9] The purported purpose of placing everything into Doud's name was to prevent departing lawyers from stealing Firm clients; there never was an expectation by anyone at the Firm that Doud would be working on the case. Wood Tr. at 46-47. Going forward, associates were instructed by Wood to file all briefs in Doud's name, using Doud's newly

---

[8] Doud's testimony on this point was contradictory. At one point he stated that he assumed Lupisella would be filing items under Lupisella's name, Doud Tr. at 22-23, but elsewhere he stated that he presumed some of the brief-writers were filing briefs under his name, Id. at 22.

[9] Zanot retired in 2015, but for the five years prior, he had ceased practicing law and was responsible for some of the Firm's administrative matters. See Ferguson Tr. at 25.

obtained CM/ECF username. McHugh Tr. at 11-12; Lemmens Tr. at 33, 34-36, 39-40, 56; Wood Tr. at 23.[10]

Following the filing of a brief, no further work would be done on a social security appeal. Lemmens Tr. at 39; McHugh Tr. at 15-16. Attorneys did not see the opposing party's brief, did not submit any type of response, and never saw a report and recommendation ("R&R") or a final decision; nor did they ask to see any of those items. Lemmens Tr. at 38-39; McHugh Tr. at 15-17. Lemmens and McHugh saw their jobs as completed once they filed a brief. Lemmens Tr. at 39; McHugh Tr. at 15. Wood was responsible for monitoring all electronic filings in the district court, but she neither reviewed the filings nor did she inform any of the attorneys that something had been filed. Wood Tr. at 26-28. Wood testified that no one reviewed R&Rs to determine whether objections should be filed. Id. at 49.[11] Wood merely printed off the final judgment and placed it in the case file, then sent a letter to the client informing the client of the decision. Id. at 28, 49.

### B. Events Leading to the Referral

The systemic and structural deficiencies in the Firm's social security practice resulted in numerous filings, in the name of Doud, that suffered from myriad significant defects. Several members of this Court have taken note of the Firm's repeated deficient performance. See, e.g., Fielder, No. 13-10325, 2014 WL 1207865 at *1 n. 1 (E.D. Mich. Mar. 24, 2014) (discussing magistrate judges who have critiqued Doud and warning that failure to advance properly supported arguments could lead to sanctions and disciplinary action); Swadling v. Comm'r of Soc. Sec., No. 14-10251, 2015 WL 1511048, at *2 (E.D. Mich. Mar. 24, 2015) (fining Doud $7,500 and referring

---

[10] Court records confirm that Doud's ECF login was obtained in December 2011.
[11] A review of the district court opinions shows that in one case, Fielder v. Comm'r of Soc. Sec., No. 13-10325, 2014 WL 1207865 (E.D. Mich. Mar. 24, 2014), an objection was filed to the R&R. The remaining district court opinions merely adopted the R&Rs with some discussing Doud's deficient performance and some imposing sanctions.

7

him for disciplinary action); Leveque v. Comm'r of Soc. Sec., No. 13-10685, 2014 WL 172297, at *1 (E.D. Mich. Jan. 15, 2014) (adopting R&R that critiqued Doud for failure to substantiate arguments); Servantes v. Comm'r of Soc. Sec., No. 14-10250, 2015 WL 870255, at *17 (E.D. Mich. Feb. 27, 2015) (fining Doud $2,500).

In one instance, Doud was ordered to take specific remedial action; Doud's and Ferguson's responses to this order gave rise to additional allegations of misconduct. On March 6, 2015, District Judge Robert Cleland issued an Order in Radford v. Comm'r of Soc. Sec., No. 14-10831, 2015 WL 998332 (E.D. Mich. Mar. 6, 2015) ("the Radford Order"), adopting an R&R issued in that social security case. In the R&R, the Magistrate Judge observed that the filing bearing Doud's name was "yet another one-size-fits-all brief, containing virtually the same conclusory allegations and absence of developed argument that other courts had found insufficient." Radford v. Comm'r, No. 14-10831, 2015 WL 998338, at *6 (E.D. Mich. December 1, 2014). The Magistrate Judge found it significant that the brief had been filed despite prior significant criticism of the briefing style leveled by another district judge. Id. In adopting the R&R, Judge Cleland made additional findings, concluding that Doud had effectively abandoned his client, and submitted work product to the Court that was not only careless, but professionally incompetent. Radford, 2015 WL 998332 at *1. Consequently, Judge Cleland ordered the following:

> Plaintiff's attorney, Richard J. Doud, must file a statement by March 20, 2015, made under oath, that he has personally delivered to Plaintiff Kimberly Radford (1) a printed copy of the Magistrate Judge's report and recommendation, (2) a printed copy of this order, and (3) a written cover letter or memorandum to Ms. Radford that contains the following statement printed in at least 13–point font:
>
>> "Your case has been dismissed. I have been ordered by the court to deliver the court orders to you. The court also ordered me to tell you that you should carefully read 1) the Magistrate Judge's report and recommendation and 2) the order of the District Court accepting the recommendation

8

and commenting on the case that I presented to the court on your behalf."

A copy of the cover letter or memorandum must be attached to the statement he files.

Id. (emphasis added).

Judge Cleland's Order, issued on March 6, was ignored by the Firm until March 16, 2015, just four days before the statement was due. Smith Tr. at 31-32. James Smith was the first to take some action relative the Radford Order; he faxed a copy to Wood's attention. Smith Tr. at 32.[12] Wood conveyed the Radford Order to Ferguson, who wanted nothing to do with it, and Ferguson instructed Wood to call Doud, give Doud the information, and tell Doud the court was directing Doud to respond to the order. Ferguson Tr. at 25-26. Wood emailed Doud a document on March 16, requesting Doud sign and return it as soon as possible. See 3/16/2015 Email at 2 (cm/ecf page) (Dkt. 35-4). In response, Doud requested the actual Order, indicating he would write a response. Id. Wood sent the Radford Order to Doud on March 18, explaining, "the judge does not want our response just the statement signed." 3/18/2015 Email at 3 (cm/ecf page) (Dkt. 35-4). Doud then instructed Wood to "[p]lease have Andrew [Ferguson] draft whatever is necessary. Sign my name to it." Id.

At some point between learning about the Radford Order and March 18, Wood made an appointment for Ms. Radford to come into the office and meet with Ferguson. Ferguson Tr. at 26. Wood provided Ferguson with a number of materials and explained that Doud wanted Ferguson to handle it, and that the Court needed a response by March 20. Id. Ferguson reviewed the materials Wood had sent him, noticing that information needed to be delivered to the client and then returned to the Court. Id. at 27. The specific materials included an affidavit, the statement to

---

[12] By happenstance, Smith was informed of the Radford Order by a rival attorney whom he ran into at the workers' compensation agency. See Smith Tr. at 31-32.

the client, and the court's decision. Id. at 28. According to Ferguson, because Wood told Ferguson he had the authority to sign for Doud, Ferguson thought it was okay. Id. at 27. Ferguson told Ms. Radford that he was "stepping in for Richard Doud in this case," and that he was "going to sign for Richard." Id. at 28. At that time, Ferguson had not personally communicated with Doud. Id. at 31.[13]

The affidavit in question avers that "Richard Doud" was "duly sworn, deposes and states, that pursuant to the [Radford Order], that he has personally delivered to Plaintiff" the required materials. See Radford Aff. at 5-6 (cm/ecf pages) (Dkt. 35-4). The signature on the affidavit purports to be Doud's and was notarized. Id. at 6 (cm/ecf page). The statement ordered to be provided to Ms. Radford also bears a signature purporting to be Doud's. See Radford Statement at 4 (cm/ecf page) (Dkt. 35-4). There is nothing on either of those two documents to indicate that they were signed by someone other than Doud or signed with Doud's permission. Doud confirmed that he had nothing to do with drafting the affidavit, that the signature on the affidavit was not his, and that he did not know whose it was. Doud Tr. at 43. However, Doud reiterated that he "authorized anything that was necessary to clean up the mess." Id.

## II. CONCLUSIONS OF LAW

### A. Richard Doud

This recitation of troubling facts establishes that Doud violated Michigan Rule of Professional Conduct (MRPC) 5.1 – which requires appropriate supervisory monitoring of subordinate attorneys – when he failed to supervise the preparation of briefs that were submitted using his signature and CM/ECF login. Doud also violated MRPC 5.1 by failing to supervise the

---

[13] Indeed, after the fact, and because he had not spoken with Doud directly, Ferguson became concerned that he may not have had Doud's permission to sign. Ferguson Tr. at 62-63. Ferguson asked Wood how Wood knew that Doud had given Ferguson permission to sign; Wood provided Ferguson with the email correspondence between her and Doud. Ferguson Tr. at 62-63.

10

appeal after the briefs were filed. The evidence before the Panel shows that once briefs were filed, no one in the Firm reviewed the R&R or decided whether to file objections. Further, by authorizing the submission of briefs bearing his name – thereby representing that he had properly reviewed or monitored their preparation – Doud violated MRPC 3.3, which mandates a lawyer's candor to courts. Doud also violated MRPC 3.3 by authorizing Ferguson to sign and submit an affidavit stating that he – Doud – had personally met with Ms. Radford (as Judge Cleland had ordered). In light of these violations, the Panel orders that Doud be suspended from practice before this Court for 90 days.[14]

1. **MRPC 5.1 (Responsibilities of a Partner or Supervisory Lawyer)**

Michigan Rule of Professional Conduct 5.1(b) states that "[a] lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct." After Lupisella's departure, Wood informed Doud that Lupisella had been filling briefs using his own signature and CM/ECF login. Wood Tr. at 23. Doud told Wood that this was not the proper procedure and that all future briefs should be filed under his name in order to prevent any departing attorneys from taking Firm clients with them. Id.

Because Doud directed Firm personnel to file social security briefs using his name, he had a duty to make reasonable efforts to ensure that the briefs were being prepared in conformity with the Rules of Professional Conduct. See MRPC 5.1(b). Testimony from Lemmens and McHugh

---

[14] In his post-hearing supplemental proposed findings, Prosecuting Counsel agrees that "Doud's conduct . . . in allowing his name to be used on briefs in federal court when he knew he was not preparing or reviewing the briefs, was a knowing violation of . . . his duty to supervise . . . " Supp. Prop. Find. at 9. Doud did not dispute this, as he did not file any response to the supplemental proposed findings. Prosecuting Counsel did not address – either in his initial or supplemental proposed findings – Doud's culpability for aiding and abetting and/or soliciting Ferguson's submission of a false affidavit to Judge Cleland. However, Doud failed to address it, as well, although the Panel asked several questions about the issue at the hearing.

makes it clear that Doud made no such efforts. Lemmens testified that he began drafting social security briefs within a month or two after starting at the Firm and that his training consisted primarily of speaking with Wood, a non-lawyer assistant, and Ferguson, a lawyer with no social security experience, who offered no substantive advice about cases. McHugh was similarly directed to write briefs without training and without a senior lawyer offering any substantive guidance.

Doud also failed to supervise the appeals process after the briefs were filed. Wood testified that once the briefs were filed, the appeals process was essentially over from the Firm's perspective. Wood Tr. at 28, 49. Doud made no effort to read the opposing party's briefs, review the magistrate judge's R&R, or determine whether filing objections was appropriate.

This profound dereliction of any oversight of the Firm's inexperienced lawyers demonstrates that Doud violated his duty to supervise pursuant to MRPC 5.1(b).

2. **MRPC 3.3 (Candor Toward the Tribunal)**

In addition to violating his duty to supervise, Doud's conduct surrounding the filing of social security briefs also violated his duty of candor toward the tribunal. The Rules of Professional conduct state that "[a] lawyer shall not knowingly make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." MRPC 3.3(a)(1).

Doud's instruction to sign his name to all future briefs after Lupisella's departure – knowing that he would have no involvement in their preparation – violated his duty of candor, because it constituted "a false statement of material fact," MRPC 3.3(a)(1). Doud's signature on the briefs unmistakably conveyed to the judges in this District the untrue assertion that he was

personally involved in the drafting of the documents or involved in supervising their preparation when, in fact, he did nothing in that regard after 2011.

Doud's conduct in response to the Radford Order also constituted a violation of MRPC 3.3(a)(1). In his Order adopting the R&R, Judge Cleland found that Doud submitted work product that was both careless and professionally incompetent. Radford, 2015 WL 998338, at *1. As a consequence, Judge Cleland ordered that Doud file a statement, made under oath, that he had personally delivered to Ms. Radford printed copies of the R&R and the order adopting it, as well as a cover letter explaining that the case had been dismissed and that Ms. Radford should read the R&R and Order. Id.

Rather than meeting with Ms. Radford and providing her with the necessary documents as ordered by Judge Cleland, Doud told Ferguson to "draft whatever is necessary" and sign his name to it. 3/18/2015 Email at 3. By giving this instruction, Doud was aiding and abetting and/or soliciting the submission of a "false statement of material fact." MRPC 3.3(a)(1). Not only did Doud fail to actually meet with Ms. Radford, he authorized the submission to the Court of an affidavit stating that he had. This lack of candor constitutes a violation of MRPC 3.3(a)(1).

3. **Discipline**

Standard 3.0 of the American Bar Association's Standards for Imposing Lawyer Sanctions states that, "[i]n imposing a sanction after a finding of lawyer misconduct, a court shoulder consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." Standard 7.2 states "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system."

The record indicates that Doud knowingly failed to supervise, in contravention of MRPC 5.1(b). To prevent attorneys from stealing Firm clients, Doud ensured that all appeals to federal court were filed in his name. Because these briefs were filed in his name, Doud had a duty to make reasonable efforts to ensure that the lawyers drafting the briefs acted in conformity with the Rules of Professional Conduct. See MRPC 5.1(b). By his own admission, Doud had abdicated all responsibility regarding the social security practice after his purported retirement in December 2011. Doud Tr. at 32. This demonstrates that he knowingly failed to make any effort to supervise the work of McHugh and Lemmens. This violation caused actual injury to the legal system by burdening it with deficient social security appeals; this burden could have been avoided had Doud exercised his supervisory responsibility. This misconduct also contributed to depriving clients of proper representation, thereby potentially depriving them of meritorious claims.

This conduct also constituted a knowing violation of MRPC 3.3(a)(1). Standard 6.1, which addresses false statements, fraud, and misrepresentation, states that "[s]uspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court . . . and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding." Standard 6.12. Doud knew that briefs were being submitted in his name even though he did not assist in their preparation. This misconduct had an adverse effect on the legal proceedings in that it misled judges as to who was actually representing parties before them.

Doud's misconduct with respect to the submission of the Radford affidavit also constituted a knowing violation of MRPC 3.3. Despite being sent a copy of the Radford Order, which required Doud to personally meet with Ms. Radford, he told Wood to have Ferguson "draft whatever is necessary" and sign his name to it. 3/18/2015 email at 3 (cm/ecf page). By instructing Ferguson

14

to sign the affidavit in his place, Doud knowingly aided and abetted the submission of a false document. This action had an adverse effect on the legal proceeding because it misled Judge Cleland.

In regard to aggravating factors, Doud had a selfish motive. See Standard 9.22(b).[15] By ordering the briefs to be filed in his name, he was attempting to retain clients in order to keep the Firm profitable. Doud stood to gain from the Firm's success because, under the shareholder buyback agreement, he was receiving a salary and health benefits. Doud's actions constituted a pattern of misconduct by allowing numerous briefs to be submitted in his name without supervision. See Standard 9.22(c). As discussed above, Doud's misconduct included violations of multiple ethical rules over a period of years. See Standard 9.22(d). Doud also made a false statement during the disciplinary process when he stated that he obtained a CM/ECF login nearly 20 years ago. See Standard 9.22(f). Finally, Doud had substantial experience in the practice of law at the time these violations occurred. See Standard 9.22(i). Doud's lack of a prior disciplinary record serves as a mitigating factor. See Standards 9.32(a). There is no evidence of any other mitigating factor.

Doud's knowing violations of MRPC 5.1(b) and MRPC 3.3(a)(1) warrant a 90-day suspension from practice before this Court.

---

[15] As noted above, courts should consider so-called "aggravating factors" when choosing a sanction. ABA Standard 9.2 lists aggravating factors including prior disciplinary record, dishonest or selfish motive, multiple offenses, bad faith obstruction, submission of false evidence, refusal to acknowledge wrongful nature of conduct, vulnerability of victim, substantial experience in practicing law, indifference to restitution, and illegal conduct. See Standard 9.22(a)-(k). Courts should also consider mitigating factors, including absence of a prior disciplinary record, absence of a dishonest or selfish motive, personal or emotional problems, effort to make restitution or to rectify misconduct, cooperative attitude, inexperience in practice of law, character or reputation, physical or mental disability, delay in the proceedings, imposition of other penalties, remorse, and remoteness of prior offenses. See Standard 9.32(a)-(m). The Panel has considered all of these factors and sets forth the applicable ones in the text.

### B. Andrew Ferguson

Ferguson committed violations of MRPC 5.1 and MRPC 5.3 when he failed to properly supervise the Firm's social security practice after Lupisella departed and Doud began to take a reduced role. However, unlike Doud, Ferguson's failure to supervise was committed negligently. On the other hand, Ferguson's actions in response to the <u>Radford</u> Order constituted a knowing violation of MRPC 3.3. In light of several mitigating factors, the Panel concludes that Ferguson's conduct warrants a public reprimand.

**1. MRPC 5.1 (Responsibilities of a Partner or Supervisory Lawyer); MRPC 5.3 (Responsibilities Regarding Non-Lawyer Assistants)**

Ferguson's conduct after Doud began his reduced role with the Firm violated multiple ethical rules regarding supervision. Specifically, MRPC 5.1(a) states "[a] partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct." Further, MRPC 5.3(a) states that "[w]ith respect to a nonlawyer employed by, retained by, or associated with a lawyer, a partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer."

As a managing shareholder of the Firm, Ferguson was required to adhere to these rules. The record indicates that Ferguson fell well short of this responsibility. After Lupisella's departure in December 2011, the Firm's social security practice was essentially run by Wood, a non-lawyer assistant. After an application for social security benefits was denied, Wood oversaw each stage of the appeal, from the administrative stage through the appeal to federal court.

Other than contributing occasionally at the administrative level, Ferguson conducted no oversight of the Firm's social security practice. Ferguson "assumed it was being handled the way

16

it always was in the past," because he figured Doud had left a "good system" in place. But that was not the reality of how the Firm operated. And Ferguson did nothing to verify – as he should have – that proper procedures and practices were being followed. This led to consistently deficient work product, an outcome that could have been avoided had Ferguson engaged in proper supervision. While Ferguson assumed things were being handled properly, it was his duty, as a managing shareholder, to make reasonable efforts to ensure that the social security practice was being run in conformity with the Rules of Professional Conduct. His failure to make such efforts constituted a violation of MRPC 5.1(1) and MRPC 5.3(a).

### 2. MRPC 3.3 (Candor Toward the Tribunal)

By signing Doud's name to the Radford affidavit, Ferguson made a "false statement of material fact" to the court in violation of MRPC 3.3(a)(1). Ferguson, like Doud, knew that Judge Cleland had ordered Doud to personally meet with Ms. Radford. Thus, despite knowing that Doud was in another state, Ferguson communicated to the court, by his signature, that Doud had met with Ms. Radford and had personally delivered to her the required cover letter and copies of the R&R and Order adopting it. Furthermore, when he signed the affidavit, Ferguson did not indicate that he was signing with Doud's permission. He simply signed as Doud to give the impression that Doud had followed Judge Cleland's instructions. This conduct violated MRPC 3.3(a)(1).

### 3. Discipline

Regarding the failure to supervise, the Panel observes that "[r]eprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system." Standard 7.3.

Ferguson believed that the Firm's social security practice was being run in accordance with a system put into place by Doud, and that his role was limited to contributing at the administrative level only. Because he was told by Doud that his help was only needed at the administrative level, Ferguson was genuinely unaware that the attorneys preparing the briefs in federal court were not being properly supervised. Nonetheless, Ferguson's conduct caused actual injury to the legal system, in the form of burdening the Court, and injury to clients who lost out on potentially meritorious claims.

While Ferguson negligently violated his duty of supervision, he knowingly violated his duty of candor. Despite knowing that Doud had not met with Ms. Radford, Ferguson submitted an affidavit to Judge Cleland falsely swearing that he did. Not only was Ferguson aware that the meeting never took place, he also forged Doud's signature on the affidavit. Although Ferguson had Doud's permission to sign for him, he failed to indicate that he was signing as Doud's agent. He also did not indicate that he met with Ms. Radford in Doud's place. This misrepresentation was made knowingly and had an adverse effect on the legal system, because it falsely led Judge Cleland to believe that his Order had been complied with.

Regarding aggravating factors, Ferguson's failure to supervise was not limited to one incident. See Standard 9.22(c). His failure to supervise began after Doud's purported retirement in 2011 and continued until the issuance of the Radford Order. Like Doud's actions, Ferguson's misconduct amounted to a violation of multiple ethical rules over a period of years. See Standard. 9.22(d). Further, Ferguson had substantial experience practicing law. See Standard 9.22(i). This experience should have prepared Ferguson to handle the supervisory responsibilities that came with being a managing shareholder at the Firm. Ferguson also should have been aware of how to properly discharge his duty of candor to the Court.

On the other hand, Ferguson's misconduct is mitigated by several factors. He made significant efforts to rectify the situation by urging his Firm to cease all federal court appeals and cooperating with Prosecuting Counsel during his investigation. See Standards 9.32(d)-(e). Further, he does not have a prior disciplinary record. See Standard 9.32(a). Finally, Ferguson has expressed remorse for his conduct, which the Panel concludes is genuine. See Ferguson Tr. at 139; 6/18/2016 Hr'g Tr. at 13, 33; Standard 9.32(l).

In light of these factors, the Panel concludes that a public reprimand is both warranted and sufficient to express this Court's profound disapproval of his misconduct.

### III. CONCLUSION

For the foregoing reasons, the Panel orders that Doud be suspended from the practice of law before this Court for 90 days; Ferguson is hereby publicly reprimanded for his misconduct. Doud is reminded that, by virtue of his suspension, the requirements of E.D. Mich. LR 83.22(e)(8) and (9) have been triggered. Doud and Ferguson are also ordered to pay, within 28 days of this Opinion and Order, the costs and attorney fees incurred by Prosecuting Counsel. If there is any dispute regarding that issue, Prosecuting Counsel shall file a motion within 28 days of this Opinion and Order; if that issue is resolved by the parties, Prosecuting Counsel shall file a certificate to that effect.

Pursuant to E.D. Mich. LR 83.22(e)(6)(H), this Opinion and Order is made public. The remainder of the docket remains under seal.

SO ORDERED.


Dated: June 23, 2017  s/ Mark A. Goldsmith
    Detroit, MI  Mark A. Goldsmith
      United States District Judge
      Panel Chair

s/Laurie J. Michelson  
Laurie J. Michelson  
United States District Judge


s/ Matthew F. Leitman  
Matthew F. Leitman  
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 23, 2017.

s/Karri Sandusky  
Case Manager